## Case No. 6,125.

### HARRIS et al. v. McGOVERN et al.

[2 Sawy. 515.] [1]

Circuit Court, D. California. Jan. 26, 1874. [2]

SAN FRANCISCO'S TITLE TO LANDS—WHEN PERFECTED—THE STATUTE OF LIMITATIONS OF 1863—LIMITATIONS—DISABILITIES — SUCCESSIVE POSSESSION.

1. The title of the city of San Francisco to its municipal lands within its charter limits, as defined by the act of incorporation of 1851 [Laws Cal. 1850–53, p. 944], became perfected July 1, 1864, under section 5 of the act of congress of that date. entitled "an act to expedite the settlement of titles to lands in the state of California" [13 Stat. 332].

2. The statute of limitations of 1863 commenced to run in favor of the adverse possession of such lands, existing at the time of the passage of said act of congress of July 1, 1864 [9 Stat. 631], as early, at least, as the date of the passage of said act.

[See note at end of case.]

---

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2 [Affirmed in 99 U. S. 161.]

3. When the statute of limitations once begins to run upon a right of action to recover lands, it is not interrupted by the subsequent descent of such right of action to a party laboring under a disability to sue at the time of such descent cast.

4. Where the disseizor conveys his title and possession, and his grantee immediately succeeds to the same possession, in pursuance of such conveyance, the possession of both constitutes one entire continuous possession for the purposes of the statute of limitations.

[Quoted in San Francisco v. Fulde, 37 Cal. 349.]

[5. Cited in Ohm v. City and County of San Francisco, 92 Cal. 437, 28 Pac. 585, to the point that legislative grants have all the effect of a patent.]

[See note at end of case.]

Action to recover one hundred vara lot No. 19, of the Laguna survey. This lot is within the charter lines of San Francisco, as defined in the act of incorporation of 1851. It lies west of Larkin street, and north-west of Johnson street, and is within the limits covered by the Van Ness ordinance. On September 25, 1848, T. M. Leavenworth, as alcalde, issued a grant for this lot to a party designated in the grant by the name of Stephen A. Harris. At that time there was at San Francisco a man named Stephen A. Harris, and another named Stephen Harris. In 1850, said Stephen Harris left California, and never returned. He went to New Jersey, where he resided several years, then removed to Illinois, where he died on November 5, 1867, leaving a will, in which he devised certain property, including said lot nineteen, to the plaintiffs, who are his children, and his heirs-at-law, and who at his death were minors. On May 1, 1854, Stephen A. Harris, at San Francisco, by deed in due form, conveyed said one hundred vara lot to one Blackstone. The defendants deraign title to said lot through said Blackstone, and they and their grantors have been in possession, claiming title adversely under said conveyance, since the spring of 1864. It does not appear that any party was in the actual possession or occupation of said premises on January 1, 1855, or between that time and July, 1855. This action was commenced on January 14, 1870. The plaintiff, Edward H. Harris, attained his majority in March, 1869; and Letitia Harris Shimer, the other plaintiff, in May, 1868. The plaintiffs claim title as devisees, and as heirs of said Stephen Harris, who is claimed to be the real party designated in the grant by the name of Stephen A. Harris, and the party to whom the grant was actually made. The testimony tends strongly to show this claim to be well founded; and for the purposes of this decision, I shall assume the grant to have been, in fact, made to said Stephen Harris. Defendants [John McGovern and others] set up the statute of limitations as one defense.

Wm. Higby and P. B. Ladd, for plaintiffs.
S. M. Wilson, for defendants.

SAWYER Circuit Judge (after stating the facts). One defense relied on by defendants is the statute of limitations. Stephen Harris was the party disseized, the adverse possession under a paper title in all respects regular on its face, having commenced several years before his death. The statute of limitations of 1863 is the one applicable. St. [Cal.] 1863, p. 325. Under this statute the time limited began to run, at least from the date of the act of congress of July 1, 1864, to settle land titles in California, at which time the title of the city of San Francisco to the municipal lands within the limits embraced by the Van Ness ordinance, became final. 13 Stat. 333, § 5.

In Montgomery v. Bevans [Case No. 9,735], Mr. Justice Field says: "Now, though the title of the city, as stated in the previous opinion, is Mexican in its origin, and was recognized and established by the decree of the circuit court of the United States, as modified by the act of congress of March 8, 1866 [14 Stat. 4], yet all adverse interest of the government to the lands within the corporate limits of 1851, being released by the act of July 1, 1864, the titles conferred by the Van Ness ordinance became perfect legal titles. The act operated upon such titles as effectually as a patent would have done." As the titles derived through the city thus became final, the title of the city itself must have become final, and the plaintiffs claim title through the city and the Van Ness ordinance.

The statute, therefore, began to run during the lifetime of Stephen Harris, and more than five years before the commencement of this action. The question under the statute then is, did the statute, having once commenced to run, continue to run notwithstanding the death of Harris, and the vesting of the title and right of action in his minor children, or was the running of the statute suspended during the minority and consequent disability of the plaintiffs? In other words, is the case within the exception of the sixteenth section of the statute, allowing those who are under disability five years after the disability ceases within which to commence the action? Under all the English statutes, it has long been settled that the exception only applies where the right of action first accrues during the disability—that when the statute once begins to run, it continues to run, and overrides all disabilities of every kind subsequently arising. Ang. Lim. §§ 477–479; Walden v. Heirs of Gratz, 1 Wheat. [14 U. S.] 296; Mercer's Lessees v. Seldon, 1 How. [42 U. S.] 37; Roberts v. Moore [Case No. 11,905]; Den v. Richards, 3 J. S. Green [15 N. J. Law] 347; Stowel v. Zouch, 1 Plow. 353; Doe v. Jones, 4 Term R. 300. The construction of the New York statute is settled in the same way. Demarest v. Wynkoop, 3 Johns. Ch. 129; Fleming v. Griswold, 3 Hill, 85; Becker v. Van Valkenburgh, 29 Barb. 324, 325.

But counsel for plaintiffs insist that the statute of California is different from the English and New York statutes, and that the decisions under those statutes, consequently, have no application. In this they are mistaken. Section sixteen of the statute of California, as amended in 1863, so far as it touches this question, is an exact transcript of section sixteen of the statute of New York, from which it was taken. It is as follows: "If the person entitled to commence any action for the recovery of real property * * * be at the time, such title shall first descend or accrue, either. First, within the age of majority," etc. St. 1863, 326. The language of the statute of New York is: "If any person entitled to commence any action in this article specified * * * be at the time, such title shall first descend or accrue, either," etc. Ang. Lim. Append. 62, § 16. It will be seen that the language is identical. The language itself is clear, independent of authority; it is, if any person "entitled" to commence an action be at the time, "such title"— that is, such title, or right to commence the action, referring to the word "entitled," in the language of the first part of the clause— "shall first descend or accrue." It only excepts the case when the right or title to commence the action "first descends" or "first accrues." It excepts only once, and that "the first." Now, in this case, the right or title to commence the action "first accrued" to Harris, the ancestor, and not to the plaintiffs. So, also, our statute is substantially a transcript of the English statute of 21 James I, which reads: "If any person * * * that is or shall be entitled to such writ (that is to commence such action), * * * or that hath or shall have such right or title of entry, be or shall be at the time of said right or title first descended, accrued, come or fallen within the age of twenty-one," etc. Ang. Lim. §§ 477–479, and Id. Append. 4, § 2. The language in all these statutes is subsequently identical, and must receive the same construction. The construction had long been thoroughly settled by judicial decisions when this provision was adopted in this state, and such construction must be presumed to have been adopted with the language. Besides, I think the construction correct.

It is further insisted that the defendants had not, personally, been in possession during the entire statutory periods, and that they cannot connect their possession with the possession of their grantors in order to make up the full term. There is nothing in this point. Harris was disseized under a claim of title, as early as 1864, and the disseizors transferred the possession acquired by them with their title to their grantees. The possession of the defendants is the same as that of their grantors—the possession and the interest were continuous. This principle has been long and repeatedly recognized by the courts of California. San Francisco v. Fulde, 37 Cal. 349. The conclusion attained renders it unnecessary to consider the other interesting points made by defendants. It results that the bar of the statute attached before the commencement of this action, and the defendants are entitled to judgment and costs. Let judgment be entered accordingly.

[NOTE. Plaintiffs took a writ of error from the supreme court (99 U. S. 161), assigning for error that the court erred in the conclusion of law that the statute of limitations began to run as early as July 1, 1864, that the defendants were in possession for more than five years subsequently, and that the defendants were entitled to judgment. The judgment of the circuit court was affirmed in an opinion by Mr. Justice Clifford in a review of the facts, holding that where the property is so situated as not to admit of use or residence, neither actual occupation, cultivation nor residence are absolutely necessary to constitute legal possession if the continued claim of the party is evidenced by such public acts of ownership as the owner would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.]