HAYNOR V. HAYNOR.

March 9, 1911.

1. DIVORCE—*Cruelty—How Charged.*—In a suit for divorce on the ground of cruelty, the facts constituting the cruelty, and not merely the pleader's conclusions from unrevealed facts, should be charged with reasonable certainty so as to enable the defendant to prepare to meet them at the trial.

2. EQUITY—*Bill for Divorce—Answer Responsive to Bill—Weight.*— When an answer under oath has not been waived, a sworn answer to a bill for divorce, which is responsive to the bill, furnishes evidence for the defendant, and will be taken as true unless overcome by the testimony of two witnesses, or of one witness and corroborating circumstances, or by documentary evidence.

3. DIVORCE—*Alimony—Parties Mutually at Fault—Case in Judgment.*—A wife who has voluntarily abandoned her husband should not have a decree for her separate maintenance, unless her abandonment of him was, without fault, rendered necessary for her safety and happiness, and was consistent with social order and public policy. In the case in judgment, both parties were at fault, and a decree for divorce and alimony should have been refused.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Cabell, Walbridge & I'Anson,* for the appellant.

*G. M. Dillard* and *John G. Tilton,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This bill was filed under Va. Code, 1904, sec. 2258, by the appellee against her husband, to obtain a divorce from bed and board for alleged cruelty and reasonable apprehension of bodily harm, and for alimony. There was a demurrer to the bill, which was overruled; and upon final hearing the court pronounced the decree under review, granting the divorce and awarding alimony.

The bill abounds in inferences based on the pleader's conclusions from unrevealed facts; but with the exception of the indefinite and general allegations, that the defendant had "threatened bodily harm to your oratrix, and . . . to put poison in her food and drink," it contains no specific averment of a traversable fact.

In *Wood* v. *Wood,* 2 Paige 113, Chancellor Wolworth observes: "The only safe and prudent course is to require the charge, whether of crimination or recrimination, to be stated in the pleadings and in the issues in such a manner that the adverse party may be prepared to meet it on trial."

In *House* v. *House,* 102 Va. 235, 46 S. E. 299, it was held that "In a suit for divorce on the ground of cruelty, the opinions of witnesses based upon their knowledge of the character or reputation of the wife that they did not believe that the husband could, with safety, cohabit with her, are not admissible in evidence. The witnesses should state the facts, and not their opinions, and let the court determine from the facts proved whether the fact in issue has been established."

In *Trumbo* v. *Fulk,* 103 Va. 73, 77, 48 S. E. 525, 526, the court said: "A demurrer admits as true all facts which are properly pleaded, but does not admit the conclusions of law from these facts which the pleader may have seen fit to introduce."

In *Ohm* v. *San Francisco,* 92 Cal. 437, 28 Pac. 580, it is said: "A conclusion of law in a pleading, so far as it is

correct, is useless, and where erroneous it is worse than use-
less, and in either case it will be treated as if not alleged in
considering objections to the pleading raised by demur-
rer."

For form of bill in such case, see 2 Bar. Chy. Pr. (2nd
ed.) 1278.

While we regard the bill faulty in the particular indi-
cated, it is not necessary to rest the decision on that
ground. The defendant filed an answer under oath, deny-
ing substantially all the allegations of the bill; and (answer
under oath not having been waived) such answer "fur-
nishes evidence for the defendant and will be taken as true
unless overcome by the testimony of two witnesses, or of
one witness and corroborating circumstances, or by docu-
mentary evidence." *Becker* v. *Johnson,* 111 Va. 245, 68 S.
E. 986, citing *Coldiron* v. *Ashville Shoe Co.,* 93 Va. 364,
25 S. E. 238.

These parties were married February 1, 1883, and had
lived together continuously from that time until August
9, 1909, a period of twenty-six years. At the time this
litigation arose the husband was sixty years of age and his
wife some ten years younger. They lived in a comfort-
able, well-furnished house in Ghent, one of the desirable
residential sections of the city of Norfolk. On Monday
morning (August 9) the husband went to his place of
business in the city, and on his return to his home in
the evening received a message from his wife, through
a servant, to the effect that she (in company with their
adopted daughter, a woman twenty-one years of age, whom
they had reared from infancy) had abandoned him and
gone to her former home in Allentown, Pa., and did not
intend to live with him any longer. It is admitted that
nothing unpleasant had occurred between the parties for
several days previous to that time, and the defendant had
no intimation of his wife's purpose to desert him, or that
she intended to file a bill for divorce.

It would serve no good purpose to recapitulate the evidence. It is sufficient to say that it shows that the parties had not lived happily together for several years. For that unfortunate situation both of them were to blame. The husband was not infrequently morose and rude and inconsiderate in his treatment of his wife. At times each of them, in the heat of passion, applied opprobrious epithets to the other. On one occasion she threw a glass of water in his face; on another he advanced toward her in a threatening manner, but the daughter interposed and no blow was struck. This is the only instance of threatened violence on his part. It was not proved, or attempted to be proved, that he threatened to put poison in her food. It does appear that on one occasion, when he discovered his wife drinking wine, he remarked that if she did not stop drinking his wine he would put poison in it. It is alleged, by way of explanation and in mitigation of this misconduct, that his purpose was merely to discourage the tendency of his wife to tipple; but it was not shown that she ever drank to excess.

Upon the entire evidence, it is plain that, in their unhappy differences, both parties were in fault; and yet the fact that they had lived together in comparative peace and harmony for more than a quarter of a century indicates that this rupture was spasmodic, and that their estrangement is not irreconcilable. It was, therefore, manifestly the duty of both, by a proper spirit of forbearance and moderation, to effect if possible, a reconciliation.

The defendant professes willingness that his wife shall return to her home—indeed, shortly after her desertion he visited Allentown and endeavored to adjust their differences.

In *Boggess* v. *Boggess,* 4 Dana (Ky.) 307, the court says: "A wife who has voluntarily abandoned her husband should not have a decree for her separate maintenance, unless her

abandonment of him was, without fault, rendered necessary for her safety and happiness, and was consistent with social order and public policy."

This is a correct statement of the law, and was approved by this court in *Carr* v. *Carr*, 22 Gratt. 168, 173.

In this age, when divorces are so frequently sought, and, in some jurisdictions, so readily obtained for wholly insufficient cause, we cannot too strongly commend the language of Sir William Scott, in *Evans* v. *Evans*, 1 Hogg. C. R. 35: "When people understand that they *must* live together, except for a few reasons known to the law, they learn to soften by mutual accommodation that yoke which they know they cannot shake off. They become good husbands and good wives from the necessity of remaining husbands and wives; for necessity is a powerful master in teaching duties which it imposes."

We perceive no good reason why these parties should not still be united and pass the evening of their lives, at least, in peace and respectability.

For these reasons the decree must be reversed and the bill dismissed.

*Reversed.*