# Richmond

## MARY PRINDES v. JOSEPH PRINDES, SR.

March 10, 1952.

Record No. 3904.

Present, All the Justices.

The opinion states the case.

*Howard H. Carwile*, for the appellant.

*Robert L. Nase* and *Geo. E. Allen,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Joseph Prindes, Sr., hereinafter referred to as the complainant, on October 27, 1949, filed his bill of complaint against his wife, Mary Prindes, praying for a divorce from bed and board on the grounds of cruelty and constructive desertion. The bill alleges that the wife continually threatened complainant, made unjustified remarks against him, repeatedly told him he was insane, and on March 16, 1948, attacked him with a hoe and threatened to kill him; and that as a result of her abuse and threats, he, apprehensive of bodily hurt, was forced to leave his home and has lived separate and apart from his wife since May 16, 1948. He further alleges that since said separation his wife abused him and threatened him at every opportunity, and finally was instrumental in having a lunacy commission commit him to the Eastern State Hospital as insane, on August 9, 1949, from which institution he was discharged as sane on September 14th following.

His wife filed an answer and cross-bill, in which she denies every material allegation of the bill, and alleges that her husband had been guilty of non-support, gross cruelty and abandonment. She prayed for alimony, counsel fees, and a divorce from bed and board.

The complainant answered the cross-bill, denying each and every material allegation therein. In an interlocutory decree, the trial court ordered the complainant to pay $25 per month for the support of his wife.

The case came on to be heard on the pleadings, and the evidence taken by depositions.

On September 28, 1950, the trial court entered a decree dismissing the defendant's cross-bill and granting complainant a divorce from bed and board. From this decree Mrs. Prindes has appealed, contending, first, that the evidence was not sufficient to justify a decree in his favor; second, that there was no corroboration of his testimony; and, third, that the court erred in dismissing her answer and cross-bill, and refusing to grant her a decree from bed and board.

The allegations of complainant's bill were vague and general with respect to the abuse and threats of his wife. The only two

specific charges were that his wife had attacked him with a hoe in March, 1948, and was instrumental in having him committed to a hospital for the mentally deficient. On the other hand, the cross-bill of his wife was specific and definite in its denials and allegations.

The evidence shows that the couple were married on July 20, 1905, in Zilina, Czechoslovakia, and thereafter emigrated to America. At the time of the institution of this suit they had lived for thirty-five years in Henrico county, Virginia. Nine children were born of the marriage, of whom seven are living, all of them over twenty-one years of age.

Complainant testified that his wife threatened him all the time, cursing him and telling him he was crazy; that he was made so nervous by her actions that he was unable to perform any work; that in March, 1948, she threatened him with a hoe; and that he then concluded he could not stand her mistreatment any longer and immediately left home and took up quarters in a room above a shop where he engaged in his trade as a cabinet maker. He admitted that his wife had never actually struck him. Upon being asked about the possibility of returning to live with her, he twice replied: ''I would rather die first before a firing squad than to live with her.''

It will be observed that his commitment to the hospital was one year and five months after March, 1948, the alleged date of the separation from his wife.

Two of the children of the couple were called to testify on behalf of their father. Mrs. Margaret P. Sochor said she knew things were bad between her father and mother; that there was bickering and trouble; and that her mother was constantly scolding and nagging the complainant. Mrs. Annie P. Nichols said that her mother made derogatory remarks against the complainant, used profane language, and threatened to have him committed to an institution for the insane. Neither of the witnesses stated the words used by the mother, the times they were used, or the reason for their use. Neither of them was asked by counsel for the complainant a single question about his commitment for insanity. Neither of them knew anything of her own knowledge about the alleged attack of the mother upon complainant with a hoe, or of any wrongful conduct of the mother with regard to the commitment of their father to the Eastern State Hospital. On the contrary, Mrs. Nichols said that she had

never seen her mother strike her father, or even threaten to strike him. Joseph Sochor, husband of Mrs. Margaret P. Sochor, said he had never heard Mrs. Prindes curse or abuse her husband or call him vile names.

Three of the children of the couple, a son-in-law, and several witnesses not related to either party, testified in behalf of the wife.

Mrs. Prindes said that she had been, at all times, a patient, faithful and dutiful wife, nursing her husband when sick, and mistreating him at no time; that he had long abused and tortured her, using vile and profane language, often calling her a common whore and accusing her of running around with other men; that he had beaten her on many occasions; that she did not call in the police because she thought he was sick; that specifically in November, 1948, overhearing her telephone conversation with a woman neighbor, he struck her in the face, blacking her eye, at the same time calling her a "son of a bitch;" that he had given her little or no support for two years, even failing to regularly pay the sum of $25 per month ordered by the trial court; that she and her husband slept in the same room until November, 1948, when he abandoned and deserted her.

She explained the hoe incident of March, 1948, saying that it occurred while she was working in her garden; that her husband, angered because the postman had not delivered a newspaper to him, came into the garden, called her a "son of a bitch," and said that he was going to strike and kill her; that she then raised her hoe in self-defense, and replied: "If you hit me, I will hit you;" and that he then left the garden.

Asked about the possibility of a reconciliation, she replied: If he would want to, I would be glad to reconcile. If he does not want to, there is nothing I can do about it."

Rudolph Prindes, Joseph Prindes, Jr., and Mrs. E. W. Clark, respectively, sons and a daughter of the couple, corroborated their mother's testimony in every respect. They said that their father had mistreated her over a long course of years; called her the vilest names, accused her of adultery and had actually beat her many times, and failed to support her. They further said that their father and mother lived and slept in the same room until November, 1948.

Mrs. H. A. Jennings, who had known the couple for twelve or thirteen years, testified that in November, 1948, she was thank-

ing Mrs. Prindes over the telephone for some fruit; that the latter screamed, and in a short time came over to her house; and that Mrs. Prindes' eye was then swelling and beginning to turn a light blue.

Mrs. Annie Levin, another neighbor, who had known the couple for fifteen or sixteen years, said that she saw the complainant take a chair after his wife, at the same time cursing and calling her vile names; but she had never known Mrs. Prindes to abuse or mistreat her husband.

Mrs. Hester Hord, a graduate nurse, who visited in the home of the parties over a period of years, had this to say:

"I have been on my farm adjoining them and I was in the yard several times when Mrs. Prindes was keeping her little grandchild and the children would be playing out there and Mr. Prindes wouldn't approve of the way Mrs. Prindes would try to correct the children and he would turn around and curse Mrs. Prindes and say awful words, cursing and abusing her and finally strike her. And in years back she has come down to the farm when my mother was living and he would have a tree limb in his hand beating her, and my mother would tell him not to beat her on her place and we were all standing there at the time. I have been on my farm adjoining and have heard Mrs. Prindes holler for help and Mr. Prindes facing her with a stick and cursing her. I saw that on several occasions. Then in 1948 I was on my farm in November and there is a little path that goes down past my place leading to the main road and Mrs. Prindes was going down there and she was crying and I asked her what was the matter and she showed me a black eye she had and said: 'You will never know how much I have suffered with this and I also have a big bruise.' I could see the black eye. She was on the road down to the next neighbor."

Weston Clark, son-in-law of the couple, corroborated Mrs. Prindes' testimony that the complainant moved away from his home about Thanksgiving, 1948. He testified that he had heard complainant, before and after the marriage of the witness, accuse Mrs. Prindes of adultery, and call her a "common dirty whore."

Section 20-99, Code of Virginia, 1950, relating to the institution and conduct of divorce suits, reads as follows:

"Such suit shall be instituted and conducted as other suits in equity, except that the bill shall not be taken for confessed, nor shall a divorce be granted on the uncorroborated testimony of

the parties, or either of them; and, whether the defendant answer or not, the cause shall be heard independently of the admissions of either party in the pleadings or otherwise; * * *.''

■ Where a divorce is sought on the grounds of cruelty or reasonable apprehension of bodily hurt, charges must be clearly proved. The witnesses should state the facts, and not their opinions, and let the court determine the issues. *House* v. *House,* 102 Va. 235, 237, 46 S. E. 299; *Haynor* v. *Haynor,* 112 Va. 123, 124, 70 S. E. 531.

In *Butler* v. *Butler,* 145 Va. 85, 88, 133 S. E. 756, it is said:

''* * * The misconduct which will form a good ground for legal separation must be very serious and such as amounts to extreme cruelty entirely subversive of the family relations, rendering the association intolerable.''

See also *Johnson* v. *Johnson,* 154 Va. 788, 789, 153 S. E. 670.

In a note to section 20-95, Code of 1950, citing cases, we find:

''The cruelty that authorizes a divorce is anything that tends to bodily harm, and thus renders cohabitation unsafe; or, as expressed in the older decisions, that involves danger of life, limb or health; and angry words, coarse and abusive language, humiliating insults and annoyances in all the forms that malice can suggest, may as effectively endanger life or health as personal violence, and will, therefore, afford ground for relief by the court.''

''When all of the evidence in a chancery cause, as well as the pleadings, have been reduced to writing, and that court (the trial court) has nothing before it but the written record, including the evidence prepared by others, it has little, if any, advantage of this court in determining the right of the cause.'' *Barnard* v. *Barnard,* 132 Va. 155, 160, 111 S. E. 227; *Kaplan* v. *Copeland,* 183 Va. 589, 32 S. E. (2d) 678.

In this case, the evidence failed to corroborate in a single particular the testimony of the complainant that he was justified in his admitted abandonment of his wife on account of the incident of March 16, 1948, or that she wrongfully had him committed to an institution for the insane. It further failed to corroborate substantially his testimony that Mrs. Prindes was ever guilty of such gross misconduct as amounted to sufficient ground for a separation of their marital ties. The evidence relied on as corroborative was not only general, vague and indefinite, but was contradicted in every respect by positive, substantial and

preponderating evidence to the contrary. The attitude of the complainant towards a reconciliation as compared with that of his wife, who had borne him nine children, reflects little credit upon his character and judgment.

■ The complainant, not having established the charges in accordance with Code, section 20-99, the trial court erred in granting him a divorce.

■ On the other hand, the testimony of the wife was corroborated by clear, positive and substantial evidence. It clearly appears from the record that her husband had, over a long period of time, subjected her not only to coarse, vile and abusive language, including base charges of prostitution and adultery, but to actual violence to her person. In addition, he failed to afford her proper support and maintenance, and finally abandoned and deserted her without just cause.

It is not clear from the record what should be the proper amount of alimony to be allowed for the support and maintenance of Mrs. Prindes. Her counsel is also entitled to compensation to be paid by the husband for his appearance in this court. As the case will have to be remanded on the question of alimony, we deem it also proper for the lower court to pass upon the amount of compensation to counsel.

For the reasons stated we reverse the decree complained of and remand the case to the trial court, with the following directions: That it dismiss complainant's bill, reinstate the defendant's cross-bill, and grant her a decree of divorce from bed and board, upon the grounds of cruelty, and desertion as of November 30, 1948; that it further ascertain and determine the proper amount to be allowed Mrs. Prindes for her support and maintenance, together with the time from which such allowance should be paid; and fix a reasonable compensation to be paid by complainant to counsel for defendant.

*Reversed and remanded.*