[Civ. No. 6240. Second Appellate District, Division Two.—October 21, 1929.]

DOLORES K. BURLINGAME, Appellant, v. WILLIAM I. TRAEGER et al., Respondents.

C. A. Stice for Appellant.

Everett W. Mattoon, County Counsel, and McIntyre Faries, Deputy County Counsel, for Respondents.

BURNELL, J., *pro tem.*—This appeal is taken from a judgment entered in favor of the defendants upon the failure of the plaintiff to amend her complaint after demurrers sustained and therefore the only question before us is as to

the sufficiency of the facts stated to constitute a cause of action against the defendant sheriff and his deputy.

An understandable presentation of the points involved in the discussion of this question requires us to set forth those portions of the pleadings which attempt to allege the gravamen of the plaintiff's cause of action. After alleging that at the time of the acts complained of defendant Traeger was the sheriff of Los Angeles County and that his co-defendant was a deputy sheriff, the complaint proceeds as follows:

"II.

"That on or about the 2nd day of July, 1926, the defendants were in possession of, and had a certain *illegal and unauthorized* order of arrest issued in the action of *L. W. Burlingame* v. *Dolores K. Burlingame,* in the Superior Court, in and for the county of Los Angeles, No. 19981.

"III.

"That the above referred to order of arrest had been issued in a civil action and was civil process *and the same was void, illegal and unauthorized for the reason that the affidavit of arrest upon which the same was issued was insufficient for the reason that it did not state facts to cause an order of arrest to issue,* and for the further reason, that the person named therein, Dolores K. Burlingame, who was the defendant in the above referred to action, and is the plaintiff in this action, was, and is a female.

"IV.

"That the above mentioned order of arrest was on the 13th day of July, 1926, vacated by order of the court in the above mentioned action of *L. W. Burlingame* v. *Dolores K. Burlingame, for the reason that the same was illegal and unauthorized.*

"V.

"That the defendants *unlawfully* served the same *illegal* order of arrest above referred to on the defendant in Los Angeles county, and that pretending to act under the above referred to *illegal* order of arrest that they, the defendants herein, did on the 2nd day of July, 1926, in the county of Los Angeles, arrest the defendant and imprison her in the county jail of Los Angeles county."

We have italicized certain portions of the pleading quoted for reasons which will presently appear.

Appellant contends, first, that the complaint sets up facts sufficient to constitute a cause of action for damages for an illegal arrest because of the allegations therein that the affidavit upon which the order of arrest was based was insufficient in that facts warranting such an order were not stated therein, and, secondly, that apart from all considerations as to the sufficiency of the pleading with respect to its allegations as to the illegality of the affidavit and the order based thereon, it sufficiently stated a cause of action in that it alleged that the plaintiff was a woman, the point being urged that under the law of California, a woman is not subject to arrest in a civil action in any court.

We are unable to agree with either of these contentions. The complaint fails to allege a single *fact* from which the court could draw the conclusion that either the order of arrest or the affidavit upon which it was based was insufficient. The portions thereof which we have italicized are mere conclusions of law as to the sufficiency of statements which are not set forth in the complaint; they are but the views of the pleader as to matters which it was for the court to determine upon an inspection of the affidavit referred to or a recital of the facts alleged therein. As said in *Callahan* v. *Broderick,* 124 Cal. 80 [56 Pac. 782, 783] : ''The necessity for a statement of the facts essential to a right claimed is not obviated by averments of legal conclusions (*Aurrecoechea* v. *Sinclair,* 60 Cal. 532), for allegations of conclusions of law will be disregarded in considering objections raised by demurrer. (*Ohm* v. *San Francisco,* 92 Cal. 437 [28 Pac. 580].) A conclusion of law tenders no issue, and a complaint which depends upon such allegations is insufficient and demurrable. (*Branham* v. *Mayor,* 24 Cal. 585.) The code provision requires a concise statement of the facts constituting the cause of action, not such statements of the law governing it. (Code Civ. Proc., sec. 426.) ''

The court below was required, in passing upon the sufficiency of the complaint when attacked by a general demurrer, to consider merely the *facts* plead therein. Its duty lay within the principle so clearly stated by the late learned Chief Justice Beatty in *Ohm* v. *San Francisco,* 92 Cal. 437, *supra:* ''In considering the objections to this com-

plaint, we remark at the outset that its allegations are accepted as true so far only as they relate to matters of fact as distinguished from matters of law. As to the latter, they will be treated as if they were not made, because, so far as they are correct, they are useless, and when erroneous, worse than useless.'' ▇▇ The rules are elementary that an allegation that an instrument is ''illegal,'' ''unauthorized'' or ''void'' is but a conclusion of law, and that such words, when used in connection with issuable facts, are to be regarded as mere surplusage and never obviate the necessity of alleging the *facts* showing wherein the illegality, lack of authorization or invalidity lies. (*Callahan* v. *Broderick, supra, Moffatt* v. *Bulson,* 96 Cal. 106 [31 Am. St. Rep. 192, 30 Pac. 1022], *Shamlian* v. *Wells,* 197 Cal. 716 [242 Pac. 483], *Miles* v. *McDermott,* 31 Cal. 270, and *Hedges* v. *Dam,* 72 Cal. 520 [14 Pac. 133].)

Stripped, then, of its conclusions of law and of the pleader and reduced to the recital of such *facts* as are plead the. complaint shows that the defendant sheriff and his deputy had an order of arrest which was a civil process, issued in an action pending in the Superior Court, and that, pretending to act under this order, they arrested and imprisoned the plaintiff on the day the order was issued and that the order was vacated eleven days later. There is not one word in the complaint to indicate that the order was not regular on its face.

We are of the opinion that the trial court very properly sustained the demurrer, not only because of the failure of the complaint to allege any facts from which the court might determine the question of the sufficiency of the affidavit on which the order was based, but also because of its failure to show any lack of regularity on the face of the order of arrest or any lack of jurisdiction of the court to issue it. ▇▇ An officer to whom an order or a warrant of arrest has been delivered for execution is not required at his peril to look behind the order if it appears to be regular on its face and issued by a court of competent jurisdiction. · The statutory law of this state provides that ''A sheriff or other ministerial officer is justified in the execution of, and must execute, all process and orders regular on their face and issued by competent authority,

whatever may be the defect in the proceedings upon which they were issued." (Pol. Code, sec. 4168.) As said in *Magnaud* v. *Traeger*, 66 Cal. App. 526 [226 Pac. 990, 992] : "Without doubt, if a writ or an order commanding a sheriff to do or to refrain from doing an act be legal upon its face and show an apparent jurisdiction, and if the court issuing the writ or making the order has jurisdiction of the subject matter, the officer will be protected when in good faith he acts in obedience to the writ or to the order." (See, also, 3 Cal. Jur. 157, and 24 R. C. L. 993.) In closing this phase of our opinion we may well adopt the language used in *Pankewicz* v. *Jess*, 27 Cal. App. 340 [149 Pac. 997, 998], wherein it was said: "the complaint shows that the imprisonment was made under a warrant, it is the duty of the plaintiff to set out in his complaint the fact that such warrant was irregular on its face (*Barker* v. *Anderson*, 81 Mich. 508 [45 N. W. 1108] ; 19 Cyc. 357; *Bárfield* v. *Turner*, 101 N. C. 357 [8 S. E. 115] ). Every allegation in the complaint in the present case may be true, and yet it may be equally true that the arrest of the plaintiff was upon a warrant regular upon its face."

■ We have so far discussed the matter before us without reference to appellant's contention that a woman is not subject to civil arrest in this state. This was undoubtedly the rule at common law so far at least as *married* women were concerned. It had its basis in a social and legal system under which a wife was little better than a chattel, presumably under the complete domination of her lord and master and denied all contractual power and independence of legal or political action, a system from which the womanhood of this nation has long since emerged victorious in a noble fight for equality of human beings regardless of sex. But even at the common law the exemption of women from arrest on civil process applied only to *wives*. A *résumé* of the law on this subject may be found in 5 Corpus Juris, pages 463 and 464, as follows:

"*Females*. At common law a wife could not be legally arrested on mesne process, and, if arrested, she may be discharged on common bail, except in cases where she has practiced a fraud in holding herself out as a married woman. In New York, notwithstanding the statute authorizing the arrest of a female for willful injury to person,

character or property, the exemption from arrest of a married woman remains as at common law.

"*Unmarried females,* on the other hand, seem to have enjoyed no privilege from arrest at common law, at least for torts committed by them. Statutes in different jurisdictions variously exempt females from arrest in all civil actions, with a saving, however, in some states as to certain specified kinds of civil actions."

The complaint in this action contains no allegation that the plaintiff was a married woman at the time of her arrest.

The rule as to the applicability of the common law is thus stated in our Political Code: "The common law of England, so far as it is not repugnant to, or inconsistent with, the Constitution of the United States, or the Constitution or laws of this state, is the rule of decision in all the courts of this state." (Pol. Code, sec. 4468.) This rule, however, is to be taken in conjunction with that stated in section 4 of the Code of Civil Procedure, which reads as follows: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice." ▇ It must also be borne in mind that "our codes, of course, were intended as complete revisions of the existing laws upon the subjects embraced therein" (*Estate of Carraghar,* 181 Cal. 15 [183 Pac. 161, 163]), and that their provisions establish the law of this state respecting the subjects to which they relate. (*In re Apple,* 66 Cal. 432 [6 Pac. 7]; *McLean* v. *Blue Point Gravel Min. Co.,* 51 Cal. 255.) It is only when the code and other statutes are silent that the common law governs.

The law relating to civil arrest in California is purely statutory and is to be found in certain sections of the Code of Civil Procedure, which also contains the rule to be applied to the construction of its various provisions, "Words used in the masculine gender include the feminine and neuter" (sec. 17). Section 478 of that code provides: "No person can be arrested in a civil action, except as prescribed in this code," the following section sets forth the

classes of action in which such an arrest may be ordered, while sections 480 to and including 504 prescribe the procedure to obtain an order of arrest, deal with the matter of bail, provide a method of vacating the order of arrest, etc. In short, it may be said that chapter 1 of title VII of the Code of Civil Procedure, in which these sections are found, prescribes a full and complete scheme of procedure, as well as establishes the rules of law governing the subject of civil arrest in actions in the Superior Courts of this state, while article I of chapter 4 of title XI of the same code ("Proceedings in Justices' Courts") deals with the same subject as applied to actions before justices of the peace.

It is significant that, while the sections dealing with the subject as applied to Superior Court actions contain nothing as to exemptions from their provisions because of sex, those relating to Justices' Court proceedings do specifically provide that "no female can be arrested in any action" (sec. 861, Code Civ. Proc.). All of these sections were enacted as portions of the original code adopted in 1872 and while a few of them have been subsequently amended none of these amendments are relevant to the subject under discussion here. It is a familiar rule that the codes are to be construed as a single statute (Pol. Code, sec. 4480; *People* v. *Central Pac. Ry. Co.*, 83 Cal. 393 [23 Pac. 303]; *McKay* v. *McKay*, 125 Cal. 65 [57 Pac. 677]), and it is also the rule that "the expression of one excludes the other"—*expressio unis est exclusio alterius.* (*Pasadena University* v. *Los Angeles Co.*, 190 Cal. 786 [214 Pac. 868]; *Ex parte Nowak*, 184 Cal. 701 [195 Pac. 402]; *People* v. *Tinder*, 19 Cal. 539 [81 Am. Dec. 77].)

Applying these rules of construction it is evident that the exemption from civil arrest accorded "females" by section 861 of the Code of Civil Procedure applies only to actions in Justices' Courts, to which class of actions alone the article, chapter and "title" in which it is found relates.

The judgment is affirmed.

Works, P. J., and Craig, J., concurred.