[Crim. No. 6776. First Dist., Div. One. Jan. 30, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. STANLEY WEITZER, Defendant and Appellant.

Franck & Hill and Douglas J. Hill for defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from an order granting probation (denominated judgment in his notice of appeal) following his conviction of possession of marijuana in violation of section 11530 of the Health and Safety Code after a court trial based on the transcript of his preliminary examination. He contends that the evidence upon which his conviction was based was inadmissible because it was secured as the result of a search which was illegal because it was predicated upon an arrest under a traffic warrant that was defectively subscribed by a rubber stamp signature, and unauthorized for service at night because of a failure of exercise of judicial discretion to so direct, and that, if the warrant was not defective, the search exceeded the scope of a search reasonably justified by such an arrest. The People assert that defendant at this stage of the proceedings cannot raise for the first time the point that the warrant was improperly executed by use of a rubber stamp for the judge's signature; that the adoption of general policy for service of traffic warrants in the nighttime, and the use of forms so directing is proper; that in any event there was reasonable cause to arrest the defendant because of a misdemeanor committed in the officer's presence; and that the search was proper.

█ It is axiomatic that the fruits of a search predicated upon an illegal arrest cannot be used as evidence to sustain a conviction for possession of that which has been illegally seized. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 12 [20 L.Ed.2d 889, 901, 88 S.Ct. 1868, 1875]; *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [6 L.Ed.2d 1081, 1090, 81 S.Ct. 871, 84 A.L.R.2d 993]; *Agnello* v. *United States* (1925) 269 U.S. 20, 33-34 [70 L.Ed. 145, 149, 46 S.Ct. 4, 7, 51 A.L.R. 409]; *People* v. *Cahan*

(1955) 44 Cal.2d 434, 445-450 [282 P.2d 905, 50 A.L.R.2d 513] ; *People* v. *Molarius* (1956) 146 Cal.App.2d 129, 132 [303 P. 350].) Inquiry is therefore directed to the legality of the defendant's arrest, and the reasonableness of the search which produced the contraband.

## The Facts

The circumstances under which the defendant was arrested and the contraband was discovered were as follows: At approximately 1 :15 a.m. on December 7, 1966 an officer of the Berkeley Police Department observed a station wagon proceeding at what appeared to be an excessive speed. He followed the automobile and found it was going between 38 and 43 miles per hour in a 25 mile per hour zone. It was driven through an intersection controlled by a blinking red stop light without stopping. The officer then activated his siren and the pursued car was brought to a halt. The defendant, who was operating the vehicle, furnished the officer his operator's permit. The officer, after checking the registration of the vehicle, returned to his patrol car to prepare to write a citation and to check the defendant's name with the police identification network for any outstanding warrant. The officer was advised by the desk sergeant that the latter had in his hands a warrant from the Berkeley-Albany Municipal Court for a traffic violation.

Thereupon the officer returned to the defendant's vehicle and placed him under arrest for the outstanding warrant. He asked the defendant to step out of the car, and to place his hands on the roof of the patrol car ''in order to pat him down for weapons and contraband.'' The defendant apparently complied, and in patting him down the officer felt an unusually large bulge in the defendant's pants pocket. He felt a sharp protruding edge, or point, on this bulky object. The officer did not know whether it was a weapon or something like a weapon. He asked the defendant what it was, and the defendant replied that it was a letter he had forgotten to mail. The object did not feel like a letter, and the officer did not .believe that it was such. He thereupon reached into the defendant's pocket and withdrew what he observed to be the end of a matchbox wrapped in a torn, crumpled and partially unfolded envelope.[1] He opened it, observed what appeared to

[1]The testimony elicited on cross-examination concerning the officer's state of mind reads as follows: ''Q. . . . Did you at that time believe it was a weapon involved in that? A. No. Q. Well, did you have reason to believe that it was anything other than what the defendant had told you

be marijuana, and placed the defendant under arrest for the charge of which he was convicted.

### Signature on the Warrant

At the preliminary examination the defendant's attorney stated without objection or contradiction, "I have checked the records and I would stipulate that this warrant was on a printed form which had the signature of I believe it was Judge Talbott, rubber stamped on it and also it is printed in part the printing says the warrant is servicable at any time, day or night." The prosecution apparently accepted the stipulation, and neither the warrant nor the orders upon which it was predicated were produced at the preliminary hearing or the trial. At the trial the defendant asserted, "The consent was a blanket consent . . . I am informed, and from looking in the records what happens is that the warrants are simply printed forms and they are run through the IBM machines that have the printing on them."

The defendant has attached to his brief a written statement of the judge whose facsimile signature was attached to the warrant which reads: "Since taking the bench in January 1959 the Clerk and Deputy Clerks of the Berkeley-Albany Municipal Court have been authorized to use my signature stamp for the purpose of stamping warrants for vehicle code violations and for parking violations and for stamping civil orders of examination and civil bench warrant letters." Also appended is an order dated October 11, 1966 of the judges of the judicial district from which the warrant issued reading as follows: "It is ordered that the signature stamps set out below may be used for the sole purpose of stamping warrants for Vehicle Code Violations and for Parking Violations, and for stamping Civil Orders of Examination and Civil Bench Warrant letters," and a copy of a warrant dated "7-08-66" which reflects that a complaint had been filed for violation of Vehicle Code section "22500.F" on "2-02-66" and fixing bail in the sum of $10. Section 22500, subdivision (f), prohibits parking on a sidewalk.

---

or some innocuous substance of some sort? A. Being wrapped in an envelope like this, the matchbox which I am familiar with, I know what a matchbox looks like, being wrapped in an envelope, I was simply curious as to what was in it. Q. I see. But you had no reason to believe that it was a weapon or contraband at that time, is that correct? A. I had no reason to believe that it could possibly be contraband because of the circumstances under which it was found, the way it was wrapped in an envelope."

At the preliminary examination and at the trial the defendant's objection, hereinafter discussed, was predicated solely on the fact that the facsimile signature demonstrated a failure by the magistrate to exercise the discretion to order an arrest at night as required by the provisions of section 840 of the Penal Code. The People contend that the defendant cannot raise the general objection at this stage of the proceedings because if it had been advanced earlier, the prosecution could have shown that the facsimile signature was adopted by the magistrate, and also could have explored more thoroughly the right of the officer to arrest the defendant for the misdemeanors committed in his presence.

In *People* v. *Brussel* (1932) 122 Cal.App. Supp. 785 [7 P.2d 403] the opinion recites: "The courts seem to be generally in accord in holding that a printed or stamped signature of a court officer is a sufficient authentication, fulfilling the requirement of a signature, where such signature has, in effect been adopted by the officer. [Citations.] If the persons whose names appeared upon the complaint as signers thereof adopted or used a rubber stamp as their signature, and such stamp was affixed by them personally, or by another in their presence and by their direction, the impression of such stamp became the lawful signature of such persons." (122 Cal.App. at pp. 788-789.) That court further observed that it would be presumed that the public officer did his duty, and that it was error to conclude that the public officer had not authorized the subscription which appeared on the instrument, merely because a rubber stamp had been used. ▆▆▆ Here, however, the record, as consensually augmented, does not show authorization as to this particular warrant, but a blanket authorization, and the question remains whether that practice is proper.

The procedure for issuance of a warrant for a misdemeanor[2] is set forth in Penal Code section 1427 as follows: "(a) When a complaint is presented to a judge of an inferior court of the commission of a public offense appearing to be triable in his court, he must, if satisfied therefrom that the offense complained of has been committed and that there is reasonable

---

[2]Prior to January 1, 1968 violation of any provision of section 22500 of the Vehicle Code constituted a misdemeanor under the provisions of section 40000. By Statutes of 1968, chapter 1192, section 10.5, p. 2261, such violations have been denominated infractions. No substantial change has been made, however, in the enforcement proceedings hereinafter discussed. (See Stats. 1968, ch. 1192, § 4, p. 2255, adding section 19d to the Penal Code.)

ground to believe that the defendant has committed it, issue a warrant, for the arrest of the defendant.'' The section continues in part: ''(b) Such warrant of arrest and proceedings upon it shall be in conformity to the provisions of this code regarding warrants of arrest, and it may be in the following form: . . .'' The warrant in question generally complies with the form prescribed except that it does not contain the statutory language, ''Witness my hand and the seal of said court . . .'', but merely bears the word ''(seal)'' and the facsimile rubber stamped signature of the judge over the title ''Judge of the Municipal Court.'' The general provisions regarding the issuance of a warrant of arrest are found in sections 813 through 816 of the Penal Code. Section 815 provides: ''It must . . . be signed by the magistrate, judge or justice issuing it with the title of his office.''

In this case no issue has been raised concerning the sufficiency of the complaint upon which the warrant is predicated. (Cf. *People* v. *Sesslin* (1968) 68 Cal.2d 418, 422-426 [67 Cal. Rptr. 409, 439 P.2d 321].) The question relates to the formal manner in which it was issued. In at least two jurisdictions it has been determined that a statute which purports to authorize a clerk of court to issue a warrant upon a complaint in writing under oath is unconstitutional. (*State* v. *Paulick* (1967) 277 Minn. 140 [151 N.W.2d 591]; and *Caulk* v. *Municipal Court for City of Wilmington* (Del. 1968) —— Del. —— [243 A.2d 707].) In the latter case the court observed, ''It is clear now, if it was not heretofore that the finding of probable cause sufficient to support the issuance of a warrant of arrest is a judicial act required to be made by a neutral and detached judicial officer. Such an officer is required to judge for himself the persuasiveness of the facts relied on to show probable cause. *Johnson* v. *United States,* 333 U.S. 210 [92 L.Ed. 436, 68 S.Ct. 367]; *Giordenello* v. *United States,* 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245]; *State of Minnesota* v. *Paulick,* 277 Minn. 140 [151 N.W.2d 591].'' [243 A.2d at p. 708].)

Defendant contends that the rationale of *Sesslin, supra,* requires a similar result in this state with respect to warrants which are issued under a blanket order which authorizes the clerk to endorse the judge's facsimile signature stamp on such warrants when issued for Vehicle Code violations and for parking violations. In *Paulick* the court considered and rejected the contention that the volume of cases in the municipal courts of the metropolitan areas made it impossible as a

practical matter for magistrates to scrutinize individually all of the complaints and warrants which emanate from their courts. The court concluded: ". . . we are not convinced either that the consequences will be as inevitably dire as predicted or that they constitute a sufficient reason for denying offenders their constitutional rights. Experience in other courts has demonstrated that a systematic method of notifying offenders who fail to respond to citations that they are subject to severely increased penalties as well as to the indignity of an arrest is usually sufficient to reduce the number of warrants to a minimum which judges can expeditiously handle." (151 N.W.2d at p. 596.)[3]

■ In this state it has been recognized that a warrant may issue for failure to appear in response to a written promise to appear contained in a notice to appear (see Veh. Code, §§ 40500-40507), in violation of the provisions of subdivision (a) of section 40508 of the Vehicle Code without compliance with the signature requirement of Penal Code section 815. (*People* v. *Superior Court* (1968) 262 Cal.App.2d 283 [68 Cal.Rptr. 629], hearing in Supreme Court denied July 10, 1968.) The court stated, in so ruling, "The determinative statutes in this matter are Vehicle Code, section 40515, and Penal Code, section 853.8. Vehicle Code, section 40515, declares in part: 'When a person signs a written promise to appear at the time and place specified in the written promise to appear and has not posted bail, the magistrate shall issue and have delivered for execution a warrant for his arrest within 20 days after his failure to appear before the magistrate. . . .' Penal Code, section 853.8, involving citations for misdemeanors recites: 'When a person signs a written promise to appear at the time and place specified in the written prom-

---

[3]The court, however, does not explain how the attainment of a law degree, admission to the bar, or elevation to the judiciary gives the magistrate greater ability than a computer, checked by adequate and efficient help, to determine whether any of hundreds of instruments presented for signature contain the necessary factual elements of a complaint for violation of a traffic or parking regulation. Although legal argument may develop as to what constitutes parking or what constitutes a sidewalk, it is unrealistic, a reduction of the law to an absurdity and promotes disrepute in the eyes of the public to expect or to require a judge to minutely scrutinize thousands of instruments to see if they state "Parked in a sidewalk in violation of subdivision (f) of Vehicle Code section 22500" or similar language. This is said, not in derogation of the right of an individual to be free from a false or groundless charge and an arrest predicated thereon, but to permit the application of modern methods of conducting business to the administration of justice, without sacrificing, and perhaps enhancing, the freedom from clerical error which the public are entitled to expect.

ise to appear and has not posted bail as provided in Section 853.6, the magistrate shall issue and have delivered for execution a warrant for his arrest within twenty (20) days after his failure to appear as promised.' These sections by their language do not require a magistrate to determine from a complaint if an offense occurred and if reasonable grounds implicate defendant, as generally required by Penal Code, section 813. The offense, failure to appear, occurs in front of the magistrate, satisfying in every case the requirements of Penal Code, section 813, and *People* v. *Sesslin,* 68 Cal.2d 418 . . . The clerk's docket entry indicates at the time of nonappearance before the magistrate, the magistrate ordered a warrant issued. Neither Vehicle Code, section 40515, nor Penal Code, section 853.8 requires the magistrate to sign the arrest warrant issued, as generally required by Penal Code, section 815. These sections, we believe, exempt Vehicle Code, section 40515, and Penal Code, section 853.8, failure to appear arrest warrants from the signature requirement of Penal Code, section 815.'' (262 Cal.App.2d at p. 285.)

In this case, as with most parking violations, there was no violation of a written promise to appear. The provisions under which proceedings are instituted against a registered owner for violation of any state or local regulation governing the standing or parking of a vehicle are found in sections 41102 and 41103 of the Vehicle Code.[4] It must be presumed on the record in this case that prior to the filing of the complaint and the issuance of a warrant a notice of the violation had been attached to the vehicle as required by subdivision (1) of section 41103, and that following the filing of the complaint notice of the violation, as required by subdivision (2) of the section, was given to the registered owner personally or by mail, and that he was informed therein that unless he appeared in court within five days after service of

---

[4]Vehicle Code section 41102 provided at the time of the issuance of the warrant in this case (prior to amendment by Stats. 1967, ch. 1130, § 1, p. 2798), in part as follows: ''(a) In any prosecution charging a violation of any regulation governing the standing or parking of a vehicle under this code or any ordinance enacted by local authorities, proof by the people of the State of California that the particular vehicle described in the complaint was parked in violation of any provision of this code or such ordinance, together with proof that the defendant named in the complaint was at the time of parking the registered owner of the vehicle, shall constitute in evidence a prima facie presumption that the registered owner of the vehicle was the person who parked or placed the vehicle at the point where, and for the time during which, the violation occurred. . . . The above provisions shall apply only when the procedure required by Section 41103 is complied with.'' [The 1967 amend-

the notice a warrant or citation to appear would be issued against him.

The proceedings are also governed by Vehicle Code section 40513 which provided and provides in pertinent part, as follows: ". . . whenever notice has been given pursuant to the provisions of Section 41102, an exact and legible duplicate copy of the notice when filed with the magistrate, in lieu of a verified complaint, shall constitute a complaint to which the defendant may plead 'Guilty' or '*Nolo Contendere.*'

"If, however, the defendant . . . does not deposit lawful bail . . . a complaint shall be filed which shall conform to the provisions of [the rules of pleading set forth in sections 948-973] of the Penal Code, and which shall be deemed to be an original complaint, and thereafter proceedings shall be had as provided by law, . . ."

■ An examination of the foregoing provisions reveals that with parking violations, where no promise to appear has been obtained, the offender is first given a notice attached to the vehicle (§ 41103, subd. (1)). If no bail is deposited within the time fixed in that notice, "a complaint shall be filed . . . and thereafter proceedings shall be had as provided by law" (§ 40513). The law applicable is again found in the

ments changed the phrase "shall constitute in evidence a prima facie presumption" to "shall constitute prima facie evidence," and added provisions to exonerate a registered owner who had leased or sold the vehicle prior to the date of the alleged offense.]

Vehicle Code section 41103 provided and provides in part as follows: "The method of giving notice for the purposes of the provisions of Section 41102 is as follows: (1) During the time of the violation a notice thereof shall be securely attached to the vehicle setting forth the violation including reference to the section of this code or of such ordinance so violated, the approximate time thereof and the location where such violation occurred and fixing a time and place for appearance by the registered owner in answer to said notice.

"Such notice shall be attached to said vehicle either on the steering post or front door handle thereof or in such other conspicuous place upon the vehicle as to be easily observed by the person in charge of such vehicle upon his return thereto.

"(2) Before any warrant of arrest shall issue following the filing of a complaint charging such a violation, a notice of the violation must be given to the person so charged. Such notice shall contain the information required in paragraph (1) above and shall also inform such registered owner that unless he appears in the court to be designated in said notice within five days after service of such notice and answers said charge, a warrant or citation to appear shall be issued against him. . . .'' [There follows provisions regarding the manner in which notice shall be given by personal delivery or mail, and the manner of proof of the giving of such a notice.]

The constitutionality of provisions similar to those set forth above as they were formerly found in section 591 of the Vehicle Code was upheld in *People* v. *Bigman* (1940) 38 Cal.App.2d Supp. 773 [100 P.2d 370].

Vehicle Code which requires further notice of the violation before a warrant can issue (§ 41103, subd. (2)).
█ The law does not expressly direct the issuance of a warrant upon the expiration of the five-day period prescribed in the second notice (cf. section 41103 with section 40515 and *People* v. *Superior Court, supra*). Nevertheless, it seems clear by implication that the Legislature contemplated that a warrant would issue at the expiration of the period fixed in the warning.

In *People* v. *Superior Court, supra,* it is not clear whether the new offense, violation of the promise to appear (§ 40508, subd. (a)), was the subject of a complaint filed with the court and the charge for which the warrant was issued, or whether the new offense merely gave rise to the filing of a complaint and issuance of a warrant on the offense for which the real party in interest was originally cited (see §§ 40513-40515). In any event, it is clear that the circumstances giving rise to the issuance of the warrant were apparent from the court's records. █ In the instant case, no new offense has been committed. Nevertheless, the facts giving rise to the issuance of the warrant have been specifically prescribed by the Legislature, and similarly may be determined from the court's records. █ The predicates fixed by the Legislature for the issuance of the warrant are the notices which must set forth the violation, including reference to the section of the Vehicle Code or of the ordinance violated, the approximate time of the violation, and the location where the violation occurred. The determination of whether the notices, and ipso facto, the complaint, contains this information, whether there are certificates on file showing that such notices have been given as required by law, and whether bail has been posted or any other response made to either notice are ministerial tasks involving searching of the records of the court. They do not involve the exercise of judicial discretion, and as in *People* v. *Superior Court, supra,* may properly be delegated to the ministerial officers of the court, as was done under the orders of the judges of the court in this case.

The general language in the Minnesota and Delaware cases must yield to the particular circumstances of this case. In those cases the courts struck down laws which permitted the clerks to take complaints and issue warrants for all offenses. In *People* v. *Superior Court,* the court upheld the validity of the clerk's use of a facsimile stamp of the magistrate's signature on a warrant which was issued as a result of a failure to

appear which was evidenced by the records of the court. ▋ In this case the practical effect is to hold that a warrant will be issued against the registered owner of a vehicle, the subject of a charge of violation of a regulation governing standing or parking, when he fails to respond to a notice directed to him at the address he has given the department. Such a rule no more offends constitutional principles than does the warrant issued under section 40515.

It is concluded that the defendant cannot assert that the warrant was totally invalid because of the use of the judge's facsimile signature.

*Arrest at Night*

Section 840 of the Penal Code provides: "If the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon the warrant, except when the offense is committed in the presence of the arresting officer."

The warrant in this case was admittedly on a printed form which included the words, "This warrant may be executed at night." At the time the warrant was issued there was in effect a court order dated June 1, 1961 which read: "It is ordered that the indorsement for arrest at night required by Penal Code Section 840 for misdemeanor offenses, shall be made on: All warrants of arrest issued and signed by a judge of this court. All bench warrants issued and signed by a judge of this court. All bench warrants ordered by the court and signed by the clerk. The indorsement may be made by printing the direction for arrest at night in the body of the warrant of arrest or bench warrant. Such indorsement shall continue without further order unless directed to be deleted from any certain warrant(s) of arrest or bench warrant(s)."

In the absence of a direction properly indorsed upon a warrant, no arrest for a misdemeanor can be made under it at night. (See *People* v. *Koelzer* (1963) 222 Cal.App.2d 20, 23 [34 Cal.Rptr. 718]; and cf. under Pen. Code, § 1533, *Call* v. *Superior Court* (1968) 266 Cal.App.2d 163, 164 [71 Cal. Rptr. 546]; and *People* v. *Mills* (1967) 251 Cal.App.2d 420, 422 [59 Cal.Rptr. 489].) ▋ Defendant throughout the proceedings has insisted that the provisions of section 840 require that the magistrate exercise his discretion in each case before directing that service may be made at night, and that a blanket direction such as is relied upon in this case is insuffi-

cient. In these contentions he is supported by amicus curiae on appeal.

The *Call* and *Mills* cases make it clear that under the provisions of section 1533 of the Penal Code[5] a search warrant, which in form contains alternative directions for service, will not suffice to authorize nighttime service where there is nothing on the face of the warrant to show that the magistrate designated either alternative. The warrant in this case presents no such ambiguity. It clearly directs that it may be executed at night, and was so prepared pursuant to order of the court.

In *People* v. *Baxter* (1942) 178 Misc. 625 [36 N.Y.S.2d 1020] the warrants did not purport to be signed by the magistrate, but were actually signed and issued by deputy clerks. The court held: ''This discretionary right of the magistrate [to endorse upon the warrant that the arrest might be made at night or on Sunday] cannot be delegated to the chief clerk or the deputy clerks of the City Court.'' (178 Misc. at p. 627 [36 N.Y.S.2d at p. 1022].) In this case, however, the question is not one of delegation, but whether the court has properly exercised the discretion vested in it.

In *Mills* the court did not condemn the use of form warrants when discretion was exercised in selecting the form appropriate for the search in question. (251 Cal.App.2d at p. 423.) The court did observe, ''Here the mandatory requirement that the magistrate exercise his discretion by inserting a direction has not been met. Because the warrant was not made to conform to either of the options open to the magistrate, this court cannot determine whether or not he exercised the discretion vested in him by the statute. The householder is entitled to the assurance that the magistrate has considered and decided whether the facts justify a night search.'' (*Id.* p. 422.) Defendant contends that similar considerations require individual review by the magistrate of the question of execution at night in each case of the issuance of a warrant of arrest. Section 1533, however, expressly requires that there must be a ''showing of good cause'' and therefore requires review of the showing made in each case. Section 840 lays down no criteria for the exercise of the discretion conferred.

---

[5]Penal Code section 1533 provides: ''On a showing of good cause therefor, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime.''

The record in this case fails to show on what basis the court made its blanket order. Defendant points out that the court's blanket order obliterates the distinction between felonies and misdemeanors which the Legislature provided in section 840, and that the legislative purpose undoubtedly was to protect people in the security of their homes at night, and an acknowledgment that a person taken into custody at night would have a difficult time securing bail or the services of legal counsel. (See *Parrish* v. *Civil Service Com.* (1967) 66 Cal.2d 260-265 [57 Cal.Rptr. 623, 425 P.2d 223]; and *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935, 87 S.Ct. 1727].) It is also noted that in 1963 the Legislature in adding the provisions of section 818 to the Penal Code[6] indicated a policy against taking persons into custody between sunset and sunrise when a promise to appear could be substituted.

On the other hand, section 840 was adopted at a time when the population was less mobile than it is now. A substantial portion of the population worked where it lived, on family farms or in family stores. Defendant concedes that if repeated attempts to serve an arrest warrant during daytime fail, or if other urgent circumstances exist, there would be grounds for directing a night arrest. If the experience of the court is such that it finds it is generally impossible to locate people at home during the daytime it is not unreasonable to provide for nighttime execution of traffic warrants. To do otherwise is to discriminate against those who conscientiously voluntarily pay for their transgressions, and to encourage those whose conscience is motivated by fear of further prosecution rather than more altruistic motives, to evade their responsibilities.

Some justification for the authorization of nighttime service may be found in the fact that an individual generally records his address—voter registration, telephone book, driver's

---

[6]"In any case in which, between sunset and sunrise, a peace officer serves upon a person, at his home, apartment, hotel room, or other place of permanent or temporary abode, a warrant of arrest for a misdemeanor offense under the Vehicle Code or under any local ordinance relating to stopping, standing, parking, or operation of a motor vehicle and where no written promise to appear has been filed and the warrant states on its face that a citation may be used in lieu of physical arrest, the peace officer may, instead of taking the person before a magistrate, prepare a notice to appear and release the person on his promise to appear, as prescribed by Sections 853.6 through 853.8 of the Penal Code. Issuance of a notice to appear and securing of a promise to appear shall be deemed a compliance with the directions of the warrant, and the peace officer issuing such notice to appear and obtaining such promise to appear shall endorse on the warrant 'Section 818, Penal Code, complied with' and return the warrant to the magistrate who issued it."

license, automobile registration—as that at which he resides. The odds are weighted heavily against finding the offender home in the daytime in today's society. In a society of emancipated and working mothers, even the housewife at home is one of a vanishing class. It is obvious that an evening visit will be more productive. Although the reported cases now more frequently refer to the apprehension at night of those, who, on detention for another offense, are located through a police network index, there has been no public outcry about officers rousting out householders in the middle of the night to post $10 bail.

Moreover, turning to the case at hand, which is the sole issue before the court, it is inferable from the failure of the offender to respond to the two notices, which have been given as required by section 41103 of the Vehicle Code, that he may not readily be located at the registered address for the car and must be apprehended when and where he can be found. The provisions of Penal Code section 818 (see fn. 6, *supra*) while indicating a desire by the Legislature to ameliorate the hardships of nighttime apprehension for traffic offenses, of themselves demonstrate that the Legislature recognizes that nighttime service of traffic warrants is an existing and necessary practice. No abuse of discretion has been demonstrated by the application of the court's general order authorizing nighttime execution to the warrant which was issued and executed in the judge's name in this case.

*Scope of the Search*

Defendant contends that even if his arrest was legal, it was unreasonable to conduct a search of his person and to examine the contents of the matchbox, because arrest for a traffic warrant does not justify a search of such scope. ■ The situation is governed by the interpretation given the Fourth Amendment of the United States Constitution by the Supreme Court of the United States and most recently expounded as follows: "This Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. [Citations.] The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. [Citations.]" (*Terry* v. *Ohio, supra,* 392 U.S. 1, 17-19 [20 L.Ed.2d 889, 903, 904, 88 S.Ct. 1868, 1878]; see also *United States* v. *Rabinovitz* (1950) 339 U.S. 56, 60-64 [94 L.Ed. 653, 657-659, 70 S.Ct. 430]; and cf. Frankfurter, J. dissenting at p. 72; *United States* v. *Lefkowitz* (1932) 285

U.S. 452, 464-467 [76 L.Ed. 877, 882-883, 52 S.Ct. 420, 82 A.L.R. 775] ; and *Agnello* v. *United States, supra,* 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409].)

In this state it has been recognized that a search of a vehicle will not be warranted where it has no relation to a traffic charge for which the defendant has been apprehended. (*People* v. *Molarius, supra,* 146 Cal.App.2d 129, 131; and see *People* v. *Blodgett* (1956) 46 Cal.2d 114, 116 [293 P.2d 57] ; *People* v. *Koelzer* (1963) 222 Cal.App.2d 20, 23 [34 Cal.Rptr. 718] ; *People* v. *Gil* (1967) 248 Cal.App.2d 189, 192 [56 Cal.Rptr. 88] ; *People* v. *Shapiro* (1963) 213 Cal.App.2d 618, 621 [28 Cal.Rptr. 907] ; *People* v. *Sanson* (1957) 156 Cal.App.2d 250, 253 [319 P.2d 422].) In *People* v. *Marsh* (1967) 20 N.Y.2d 98 [228 N.E.2d 783, 281 N.Y.S.2d 789] the Court of Appeal of New York by a divided court, ruled ". . . no search for a weapon is authorized as incident to an arrest for a traffic infraction, regardless of whether the arrest is made on the scene or pursuant to a warrant, unless the officer has reason to fear an assault or probable cause for believing that his prisoner has committed a crime." (20 N.Y.2d at p. 102 [228 N.E.2d at p. 786, 281 N.Y.S.2d at p. 793]. See also Note, *Search and Seizures Incident to Traffic Violations* (1963) 14 Hastings L.J. 459 at p. 461; and Note, *Search Incident to Arrest for Traffic Violation* (1959) Wis. L.Rev. 347.)

In *People* v. *Graves* (1968) 263 Cal.App.2d 719 [70 Cal. Rptr. 509], as modified 264 A.C.A. 679, this court recently had occasion to consider the question of the right to search and the scope of the search attendant to an arrest under an outstanding traffic warrant. ▮ We concluded, after a review of decisions of the United States Supreme Court, and decisions of the courts of this state and of the State of New York, that "a valid arrest for a traffic offense permits a search by the arresting officer of the arrestee's person for weapons, but does not justify a complete search of his person for evidence of other unrelated crimes unless the officer has probable cause for believing that the traffic offender is guilty of a crime other than the traffic offense for which he is being arrested. In the latter instance, the arresting officer is entitled to conduct a contemporaneous search of the offender's person not only for weapons, but also for the fruits of or the implements used to commit crime." (263 Cal.App.2d at pp. 733-734.) The doctrine enunciated in *Marsh* was rejected, and the balance of the interest of protecting the arresting officer from assault and the indignity of subjecting a mere traffic offender to a search

for weapons was weighted in favor of the officer's safety. (*Id.* pp. 734-735. See also *People* v. *Strelich* (1961) 189 Cal.App.2d 632, 635-636 [11 Cal.Rptr. 807]; and *People* v. *Stewart* (1961) 189 Cal.App.2d 176, 179 [10 Cal.Rptr. 879].)

The officer therefore was entitled to conduct a carefully limited search for weapons which might be used to assault him. When he felt the bulky object with the sharp protruding edge or point he did not know what it was. It is unnecessary to determine whether he was then entitled to reach in and extract it in order to determine its nature. It may be noted that a rule which requires identification of a weapon to a certainty from a pat search might fall short of protecting the officer from subsequent assault, whereas too free an exercise of doubt would completely emasculate the principle that an arrest for a traffic offense alone does not justify a complete search of the arrestee's person for evidence of other unrelated crimes.[7] In this case the officer did not proceed impetuously. He asked the defendant what the object was and received an answer which, from the size and shape of the object, he reasonably considered was palpably false. Under these circumstances it was not only reasonable to investigate further by removing the object for observation, but would have been foolhardy to refrain from doing so. (See *People* v. *Graves, supra,* 263 Cal.App.2d at pp. 734-735; *People* v. *Strelich, supra,* 189 Cal.App.2d at p. 635; and *People* v. *Stewart, supra,* 189 Cal.App.2d at p. 179.) The fact that the officer may have had the intent "to pat [the defendant] down for weapons and contraband" does not render the legitimate search for the weapons irregular. The officer described the

---

[7]One aspect of the problem has not yet been considered in the cases. If the arrestee is to be booked and jailed under an existing warrant (as distinguished from being cited for a current traffic offense, or from being brought in to post bail without being booked and confined) there would be an undoubted right to go through his possessions to prevent the introduction of contraband into the jail, and in order to inventory his possessions. (See Pen. Code, § 4003; and *People* v. *Monreal* (1968) 264 Cal.App.2d 263, 265 [70 Cal.Rptr. 256]; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 462 [67 Cal.Rptr. 826].) It may be questioned whether postponing the full search from the field to the station house is such a substantial right that it should be protected against the unusual but, if extant, grievous risk of an assault on the officer from a well concealed weapon which is not disclosed on superficial search. The United States Supreme Court cases appear to recognize that a valid arrest, as distinguished from a detention for interrogation, generally warrants a complete search of the person. (*Peters* v. *New York* (1968) 392 U.S. 40, 67 [20 L.Ed.2d 917, 918, 88 S.Ct. 1889, 1905]; *United States* v. *Rabinowitz, supra,* 339 U.S. 56, 60; *Agnello* v. *United States, supra,* 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409].)

search as follows: "The type of search that is made there is what is termed a pat down. It's simply finding large objects in the pocket which would possibly be weapons. This is strictly for the officer's own protection rather than patting you rub actually placing the hands on the arms or on the legs or whatever it happens to be, and then running the palm of your hand over the clothes surface." As stated in *People* v. *Strelich, supra*, ". . . there was no reason why a suspicion that a defendant might possess a narcotic should have deterred [the officer], in the interest of his own safety, from ascertaining what it was defendant was endeavoring to remove from his pocket." (189 Cal.App.2d at pp. 635-636.) So here the initial unfounded suspicion of the presence of contraband and the intent to search therefor does not derogate from the unquestioned right to search for weapons.

The crucial stage arose when the officer ascertained that the object was not a weapon. It did not, however, have the appearance of a letter which the defendant had forgotten to mail. (Cf. *People* v. *Kraps* (1965) 238 Cal.App.2d 675, 677 [48 Cal.Rptr. 89].) The falsehood, coupled with the unusualness of finding a matchbox wrapped in a crumpled envelope, reasonably created the impression that the matchbox contained something that the defendant wished to conceal. The curiosity of a reasonable man, and, more certainly, the professional curiosity of a police officer, would properly be aroused. It was not unreasonable for the officer to pursue the investigation which had taken a new turn because of the defendant's attempted concealment. It is well established that furtive conduct evidenced by a body movement indicating that some object is being concealed in a vehicle which is the subject of a traffic arrest will justify a search of that portion of the vehicle where it appeared that the object was hidden. (*People* v. *Gil, supra*, 248 Cal.App.2d 189, 192-194; *People* v. *Shapiro, supra*, 213 Cal.App.2d 618, 621; *People* v. *Sanson, supra*, 156 Cal.App.2d 250, 253-254; and see *People* v. *Elliott* (1960) 186 Cal.App.2d 185, 188-189 [8 Cal.Rptr. 716].) So here the officer could properly open the matchbox to determine what the defendant was seeking to conceal.

It is recognized that a person's reasons for concealment may run the whole spectrum from the most legitimate motives to the most heinous, and that in the absence of circumstances tending to indicate contraband, an investigating officer cannot speculate as to the nature of the contents of a closed package. (See *People* v. *Marshall* (1968) 69 Cal.2d 51, 56-57

[69 Cal.Rptr. 585, 442 P.2d 665] as modified 69 A.C. 187.) On balancing all of the circumstances, the person under arrest cannot complain because his attempted concealment is taken as evidence of consciousness of guilt. "It is a natural impulse on confrontation to hide immediately any contraband, and one cannot be heard to complain that he, or a companion, has betrayed the presence of illegal goods by the alacrity with which he attempted to conceal them." (*People v. Jiminez* (1956) 143 Cal.App.2d 671, 674 [300 P.2d 68]; and see *People v. Crowley* (1961) 193 Cal.App.2d 310, 315-317 [14 Cal. Rptr. 112].) The search was not illegal because it ultimately turned up contraband rather than a weapon or any other thing which might have been used to effect an escape. (*People v. Gil, supra,* 248 Cal.App.2d 189, 192; *People v. Kraps, supra,* 238 Cal.App.2d 675, 680; *People v. Strelich, supra,* 189 Cal.App.2d 632, 636; *People v. Jiminez, supra,* 143 Cal.App. 2d 671, 673.) Nor can it be said that the traffic arrest was used as an excuse for an unwarranted general shakedown. (Cf. *People v. Gale* (1956) 46 Cal.2d 253, 257 [294 P.2d 13]; *People v. Franklin* (1968) 261 Cal.App.2d 703, 707 [68 Cal. Rptr. 231]; and *People v. Molarius, supra,* 146 Cal.App.2d 129, 132.)

The search was not unreasonable under the circumstances of the case, and the contraband discovered was properly admitted in evidence against the defendant.[8]

*Arrest for Observed Violations*

The People assert that even if there was error in concluding that the direction for nighttime execution of the warrant of arrest was valid, that conclusion should not avail

[8]Since this opinion was prepared attention has been directed to *Byrd v. Superior Court* (1968) 268 Cal.App.2d 495 [73 Cal.Rptr. 880], in which the court ordered the suppression of evidence which was discovered when the officer grabbed the traffic offender's sweater and pulled it up to determine the nature of a large bulge observed in his waistband. In that case the search attendant to the issuance of a citation was equated with the search permitted in connection with an investigation. (Cf. discussion, *infra.*) In this case the search was incident to an arrest. Moreover, although the decision refers to some prior furtive conduct, there is no evidence of any untoward conduct in connection with the nature of the bulge itself. (See also *Virgil v. Superior Court* (1968) 268 Cal. App.2d 127, 130-132 [73 Cal.Rptr. 793]; *People v. Van Sanden* (1968) 267 Cal.App.2d 662, 664-666 [73 Cal.Rptr. 359]; and *People v. Moray* (1963) 222 Cal.App.2d 743, 746-747 [35 Cal.Rptr. 432]; and cf. *People v. Bordwine* (1968) 268 Cal.App.2d 290, 292 [74 Cal.Rptr. 1]; *People v. Armenta* (1968) 268 Cal.App.2d 248, 251-253 [73 Cal.Rptr. 819]; and *People v. Monreal* (1968) 264 Cal.App.2d 263, 265-267 [70 Cal.Rptr. 256].)

the defendant in this case. He was properly arrested for the misdemeanors (speeding in violation of sections 22350-22352, and failure to stop in violation of section 21457) committed in the officer's presence. The provisions of chapter 2, of division 17, contemplate that the offender is under arrest from the time of his apprehension until he is released upon giving his written promise to appear. (See §§ 40300-40305 and 40500-40504; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 463-465 [67 Cal.Rptr. 826]; and *People* v. *Randolph* (1957) 147 Cal.App.2d Supp. 836, 840-841 [306 P.2d 98].)

Neither offense observed falls within the provisions of section 40302 or 40304 of the Vehicle Code. It was, therefore, the officer's duty, in the absence of the existence of the warrant, to release the defendant upon his giving a written promise to appear (§ 40504; *People* v. *Wohlleben, supra,* 261 Cal.App.2d 461, 464). When and until circumstances appear which would warrant the officer's keeping the violator in custody the application of the rule of *Marsh* (*supra,* 20 N.Y.2d 98, at p. 102), as noted in *Graves* (*supra,* 263 Cal.App.2d 719, at p. 732), which limits the right to search, is more appropriate. In other words, the traffic offender who is entitled to be released upon his written promise to appear may not even be searched for weapons unless the officer suspects that he is dangerous, or has, as in *Graves,* reasonable cause for suspecting that the offender is guilty of a crime, rather than a simple traffic infraction. The People cannot predicate the search on the "arrest" for the particular violations which were observed.

### Reasonable Cause

The concentration on the question of the legality of the defendant's arrest has diverted attention from the more fundamental issues, Was the search and seizure reasonable? and, Should the evidence be excluded? The officer was proceeding under color of what he believed to be lawful authority. Section 262.1 of the Code of Civil Procedure provides as follows: "A sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." (See also, Civ. Code, § 43.5(a); *Vallindras* v. *Massachusetts etc. Ins. Co.* (1954) 42 Cal.2d 149, 153-154 [265 P.2d 907]; *Muller* v. *Reagh* (1963) 215 Cal.App.2d 831, 837-838 [30 Cal.Rptr. 633]; *Jackson* v. *Osborn* (1953) 116 Cal. App.2d 875, 881-882 [254 P.2d 871]; *Barrier* v. *Alexander*

(1950) 100 Cal.App.2d 497, 501 [224 P.2d 436]; *Downey* v. *Allen* (1939) 36 Cal.App.2d 269, 273 [97 P.2d 515]; *Malone* v. *Carey* (1936) 17 Cal.App.2d 505, 506-507 [62 P.2d 166]; *Burlingame* v. *Traeger* (1929) 101 Cal.App. 365, 369-370 [281 P. 1051]; and *Pankcwicz* v. *Jess* (1915) 27 Cal.App. 340, 341-342 [149 P. 997]; and cf. *Culbertson* v. *County of Santa Clara* (1968) 261 Cal.App.2d 274, 275-276 [67 Cal.Rptr. 752].) In *Penkewicz* v. *Jess, supra,* the court stated: ''A warrant is a process issued in the name of the state, directed to any sheriff, constable, marshal or policeman, commanding him to arrest and take into custody the named defendant (Pen. Code, § 1427). The failure to serve a warrant issued by a recorder's court, it appears, would be disobedience of a lawful order of the court, and hence a contempt thereof, for which the officer so disobeying might be punished as provided by law (Code Civ. Proc., § 906, subd. 3).

''An officer whose duty it is to serve process is bound to serve the same when such process is regular on its face. Process is said to be regular on its face when it proceeds from a court, officer, or body having authority of law to issue process of that nature, and which is legal in form, and contains nothing to notify or fairly apprise any one that it is issued without authority [citations].'' (27 Cal.App. at pp. 341-342.)

The warrant in this case proceeded from a court having authority to issue process of that nature, it was legal in form, and contained nothing, unless it was the facsimile signature, to notify or fairly apprise anyone that it was issued without authority, or that it did not unequivocally direct that arrest could be made under it at night. As has been noted above there is nothing illegal about the use of the facsimile signature where it is affixed under the supervision and by the direction of the signator. *(People* v. *Brussel, supra,* 122 Cal.App. Supp. 785, 789.) Neither the officer at the stationhouse nor the officer in the field was required at his peril to look behind the warrant to determine whether all the proceedings leading up to its issuance were regularly performed. *(Vallindras* v. *Massachusetts etc. Ins. Co., supra,* 42 Cal.2d 149, 154; *Burlingame* v. *Traeger, supra,* 101 Cal.App. 365, 369.) They were not only authorized, but duty bound to see that the warrant was executed. Any subsequent determination that the warrant was invalid because the use of a facsimile signature had not been properly exercised, or because the direction for nighttime execution had not been properly

inserted, would not render the arresting officer's conduct tortious. (*Vallindras* v. *Massachusetts etc. Ins. Co., supra,* at p. 156.)

The facts that the officer had a duty to execute the warrant which appeared regular on its face, and that he is protected from civil liability in the event of a defect in the proceedings leading to its issuance do not render the arrest legal if the warrant was in fact improperly issued. If the arresting authorities had filed and proceeded on a complaint which failed to show reasonable cause for the issuance of a warrant, the invalidity of the warrant and the arrest predicated thereon would taint all subsequent proceedings and require the exclusion of evidence so obtained. (*People* v. *Sesslin, supra,* 68 Cal.2d 418, 426.) On the other hand, where a search is based on an arrest predicated on probable cause but which, nevertheless, is erroneous because of a mistake of identity, the mistake will not vitiate the search attendant to the arrest. In *People* v. *Hill* (1968) 69 Cal.2d 550 [72 Cal.Rptr. 641, 446 P.2d 521], the court concluded, "In summary, we hold that the reasonable but mistaken beliefs of the police did not render their conduct unreasonable in a constitutional sense. Mistake of identity does not negate probable cause to arrest, and a search based on a valid but mistaken arrest is not unreasonable as an unwarranted invasion of either the arrestee's or the defendant's privacy." (69 Cal.2d at p. 555.) Since the arresting officer was not a party to any of the alleged defects in the proceedings attendant to the issuance of the warrant upon, from all that appears, a valid complaint, his reasonable belief that the warrant was validly issued, even though mistaken, should not render his conduct unreasonable in a constitutional sense.

In *Daly* v. *Pedersen* (D.Minn. 1967) 278 F.Supp. 88 a claim was made that the plaintiff had been arrested in violation of his constitutional rights, because he was arrested on a warrant issued by the clerk in violation of the principles enunciated two months after his arrest in *State* v. *Paulick* (*supra,* 277 Minn. 140). The federal court recognized, "As a general rule an arrest, lacking an appropriate warrant or without probable cause, constitutes a violation of due process giving rise to a claim under § 1983. [Citations.]" (278 F.Supp. at p. 91.) The court, however, concluded "that a police officer's liability under the Civil Rights Act cannot be premised upon an unforseeable tortious result where the officer acted in good faith." (*Id.* p. 93.) It noted that the officer could not have

anticipated the decision made two months after he executed the warrant, and that at the time it was issued it conformed with the procedures then existing in Minnesota. The court refused to give the *Paulick* ruling retroactive application. (*Id.,* pp. 93-94. See also *Pierson* v. *Ray* (1967) 386 U.S. 547, 555-557 [18 L.Ed.2d 288, 295-296, 87 S.Ct. 1213, 1218-1219].)

Evidence is suppressed, and search for the truth is disregarded "to compel respect for the constitutional guaranty . . . by removing the incentive to disregard it." (*Mapp* v. *Ohio, supra,* 367 U.S. 643, 656 [6 L.Ed.2d 1081, 1090, 81 S.Ct. 1684].) In this case there was a valid charge against the defendant. The magistrate could have personally signed a warrant for the defendant's arrest, and individually selected a warrant that directed service at night. The fact that some of these acts were delegated to a clerk under a blanket order violated no constitutional mandate. There is nothing to show that either practice, if invalidated, would not cease. (Cf. *Terry* v. *Ohio, supra,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868, 1875] ; *People* v. *Cahan, supra,* 44 Cal.2d 434, 445.)

In finding that the search conducted following the arrest under color of the warrant as issued was reasonable, this court is not participating in or condoning a lawless activity of law enforcement officers, or of the magistrate. (See *Terry* v. *Ohio, supra*; and *People* v. *Cahan, supra.*) At most there was a failure to follow what the defendant contended were procedural steps required by statute. In fact, before the superior court, the defendant expressly disavowed that he considered the service of traffic warrants at night unconstitutional and asserted that his objection was to the manner in which the direction for night arrest was inserted in the warrant. Since from all that appears the offense was properly charged and the warrant was issued and executed in good faith, it would be unreasonable to invalidate the arrest and attendant search, and expose the officer, clerk and court to further penalties. The reasons for the application of the exclusionary rule failing, it should not be applied in this case.

*Conclusion*

The problems of this case are engendered by the fact that our society uses a common system to regulate traffic and parking on our streets and highways, to control public morals and health, and to apprehend, punish and rehabilitate those who commit offenses against persons and property. Sensibilities are touched, and legal succor is sought when restraints on liberty which are authorized for the regulation of traffic result in the

apprehension of those violating the strictures which have been imposed upon personal conduct in the name of public morals and health. There is not such keen revulsion when the offender against person or property is caught in the web spun for the lesser offender.

The personal freedom protected by constitutional principles is not immune from reasonable restraints for the enforcement of traffic regulations. The Legislature has demonstrated that it can provide different remedies for the enforcement of minor offenses by the 1968 amendments to the Vehicle Code, which distinguish between infractions and those violations which still constitute misdemeanors and felonies, and by those provisions of the code which direct under what circumstances a violator may be released from custody. If there are abuses in the enforcement of these laws against those offenders who fail to respond to, or who are not uncovered by, a system of citations and notices, the Legislature can be relied upon to respond to public pressure that they be curbed.

The fact that evidence of a more grievous offense is discovered in the routine enforcement of the traffic laws is not of itself a ground for excluding that evidence. A distinction should be drawn between those cases where a traffic stop or warrant is used as a pretext for detention and arrest in order to affect a search of a person, vehicle or premises, and a case, such as the instant one, where the inculpating search is the fortuitous result of a routine arrest. The law will not suffer the enjoyment of that fruit which is plucked by the trespassing harvester, or that which he shakes down surreptitiously. There is, however, no prohibition against gaining sustenance from that fruit which lies and is gathered along the path the finder justly treads.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1969. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.